UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIAISHIA ROLAND WILLIAMS,
o/b/o L.M.B., a minor,

                    Plaintiff,          Civil Action No. 19-10753
                                                Honorable Denise Page Hood
v.                                        Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [16, 18]

      Kiaishia Roland Williams brings this action on behalf of her minor daughter, L.M.B. ("Plaintiff"),[1] pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #16, #18), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

      For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the Act is supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for

---

[1] For convenience, the Court will refer to L.M.B., the minor child, as "Plaintiff" throughout this brief, although her mother, Kiaishia Roland Williams, is the named plaintiff in this action.

Summary Judgment **(Doc. #18)** be **GRANTED**, Plaintiff's Motion for Summary Judgment **(Doc. #16)** be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.    REPORT

### A.    Procedural History

On September 20, 2016, an application for SSI was filed on Plaintiff's behalf, alleging a disability onset date of September 1, 2015. (Tr. 141-46). This application was denied initially on March 22, 2017. (Tr. 74-78). After a timely request for an administrative hearing was filed, a hearing was held on March 15, 2018, before ALJ Allison Dietz. (Tr. 31-59). Both Plaintiff and Ms. Williams appeared and testified at the hearing, accompanied by non-attorney representative Sharon Rossiter. (*Id.*). On July 13, 2018, the ALJ issued a written decision finding that Plaintiff is not disabled under the Act. (Tr. 12-27). On January 11, 2019, the Appeals Council denied review. (Tr. 1-5). On behalf of Plaintiff, Ms. Williams timely filed for judicial review of the final decision on March 12, 2019. (Doc. #1).

### B.    Framework for Child Disability Determinations

A child under age eighteen is considered "disabled" within the meaning of the Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Social Security regulations set forth a sequential three-step process for determining a child's disability claims: first, the child

must not be engaged in "substantial gainful activity"; second, the child must have a "severe" impairment; and third, the severe impairment must meet, medically equal, or functionally equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  *See* 20 C.F.R. § 416.924(a).

To "meet" a listed impairment, a child must demonstrate both the "A" and "B" criteria of the impairment.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1.  Paragraph A of the listings is a composite of medical findings that are used to substantiate the existence of a disorder, whereas the purpose of the paragraph B criteria is to describe impairment-related functional limitations that are applicable to children.  *See id.*  Further, to be found disabled based on meeting a listed impairment, the claimant must exhibit all the elements of the listing.  *See Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).

If a child's impairment does not "meet" a listed impairment, the impairment may still be medically or functionally equal in severity and duration to the medical criteria of a listed impairment.  *See* 20 C.F.R. § 416.926a.  "Medical equivalency is covered by 20 C.F.R. § 416.926; functional equivalency is covered by Section 416.926a."  *Vansickle v. Comm'r of Soc. Sec.*, 277 F. Supp. 2d 727, 729 (E.D. Mich. 2003).

"To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment."  *Walls v. Comm'r of Soc. Sec.*, No. 1:08CV254, 2009 WL 1741375, at *8 (S.D. Ohio June 18, 2009) (citing 20 C.F.R. § 416.926(a)).  A claimant can demonstrate medical equivalence in any of three ways:

3

(1) by demonstrating an impairment contained in the Listings, but which does not exhibit one or more of the findings specified in the particular listing, or exhibits all of the findings but one or more of the findings is not as severe as specified in the particular listing, if the claimant has other findings related to his impairment that are at least of equal medical significance to the required criteria;

(2) by demonstrating an impairment not contained in the Listings, but with findings at least of equal medical significance to those of some closely analogous listed impairment; or

(3) by demonstrating a combination of impairments, no one of which meets a Listing, but which in combination produce findings at least of equal medical significance to those of a listed impairment.

*Evans ex rel. DCB v. Comm'r of Soc. Sec.*, No. 11-11862, 2012 WL 3112415, at *6 (E.D. Mich. Mar. 21, 2012) (quoting *Koepp v. Astrue*, No. 10-C-1002, 2011 WL 3021466, at *10 (E.D. Wis. July 22, 2011)); *see also* 20 C.F.R. § 416.926. "The essence of these subsections is that strict conformity with the Listing Requirements is not necessarily required for a finding of disability. If a plaintiff is only able to demonstrate most of the requirements for a Listing, or if he or she is able to demonstrate analogous or similar impairments to the impairments of a Listing, the plaintiff may nonetheless still satisfy the standards if the plaintiff can show impairments of equal medical significance." *Evans*, 2012 WL 3112415, at *7 (quoting *Emeonye v. Astrue*, No. 04-03386 SC, 2008 WL 1990822, at *4 (N.D. Cal. May 5, 2008)).

Regarding functional equivalence, there are six "domains" that an ALJ considers: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a. Functional equivalence to

4

a listed impairment exists when the child has an "extreme" limitation in one of the six domains or "marked" limitations in two of the six. *See* 20 C.F.R. § 416.926a(d). An "extreme" limitation exists when a child's impairment(s) interferes "very seriously" with the child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(3)(i). A "marked" limitation results if the child's impairment(s) interferes "seriously" with the child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(2)(i).

### C.   Evidence of Record

#### 1.   *Disability Reports and Other Records*

Plaintiff was born on January 18, 2002, making her fourteen years old at the time her application for SSI was filed. (Tr. 149). Plaintiff alleges disability primarily as a result of a seizure disorder, as well as headaches, tremors, depression, and anxiety. (Tr. 15, 153).

In a November 29, 2016 daily activities report, Ms. Williams indicated that, when Plaintiff wakes up, she "has the shakes." (Tr. 159). She doesn't hang out with friends or participate in after-school activities because she "just wants to sleep." (*Id.*). She misses school frequently and cannot be left alone unsupervised. (Tr. 160).

A "teacher questionnaire" was completed in March of 2017 by Plaintiff's ninth grade resource room teachers, Carrie Kephart and Tanille Hill. (Tr. 163-70). They noted that Plaintiff's reading level was in the 8th percentile, and her math skills were in the 15th percentile. (Tr. 163). Ms. Kephart and Ms. Hill noted that Plaintiff had experienced a traumatic brain injury and suffered seizures, but they did not know how frequently the seizures occurred. (Tr. 169). They further noted that, although Plaintiff's attendance had

recently improved, she had missed a "significant amount" of school in the past.  (*Id.*).

However, they stated that they observed no problems in Plaintiff's ability to acquire

and use information (Tr. 164), a few "slight" and one "obvious" problem in attending

and completing tasks (Tr. 165), no problems in interacting and relating with others

(Tr. 166), no problems in moving about and manipulating objects (Tr. 167), and no

problems in caring for herself (Tr. 168).

A second "teacher questionnaire" was completed in February of 2018, by Plaintiff's

tenth grade teachers, Allison Bondie and Tanille Hill.  (Tr. 179-86).  At that time, Plaintiff's

reading level was in the 17th percentile, and her math skills were in the 15th percentile.

(Tr. 179).  The teachers indicated that Plaintiff was "generally able to work independently,"

but noted she had 26 absences in the first semester of her sophomore year.  (Tr. 180, 185).

They stated that they observed only two "slight" problems in acquiring and using

information (Tr. 180), no problems in attending and completing tasks (Tr. 181), only one

"slight" problem in interacting and relating with others (Tr. 182), no problems in moving

about and manipulating objects (Tr. 183), and only one "slight" problem in caring for

herself (Tr. 184).  By March of 2018, she had 57 absences for the school year.  (Tr. 189).

### 2.   *The Administrative Hearing*

At the time of the March 2018 hearing before the ALJ, Plaintiff was sixteen years

old and in tenth grade.  (Tr. 38).  She testified that she was failing two classes but got along

with her teachers and had two good friends.  (Tr. 41-42).  She further testified that she has

"tremors" two or three times a week, which last "all day."  (Tr. 46).

6

Plaintiff's mother, Ms. Williams, also testified at the administrative hearing, indicating that Plaintiff has seizures "every other day or so," which cause her to shake and jerk. (Tr. 50-51). According to Ms. Williams, Plaintiff cannot hear or understand during these episodes. (Tr. 51). Ms. Williams further testified that these seizures last "about 10 to 15 minutes," after which Plaintiff is in a "snoring state" for thirty minutes to an hour.[2] (Tr. 52). Plaintiff's course of treatment includes taking medication to manage her seizures, but Ms. Williams testified that the medication was not helpful. (Tr. 56-57).

### 3. *Medical Evidence*

In November 2008, Plaintiff and her mother were both hit by a car while they were crossing a street. (Tr. 200). Plaintiff was transferred to Children's Hospital because she had a broken left leg; while there, she denied suffering a head injury or loss of consciousness. (Tr. 218). Although a CT scan of her head showed a "small left parietal subdural hematoma" (Tr. 222), physical examinations showed "no evidence of any injury to the head or neck" (Tr. 200) and no "obvious cognitive or attention deficit or behavioral problems" (Tr. 216). Plaintiff underwent surgery for a fractured femur and was discharged several days later. (Tr. 221-23).

Almost ten years later, on September 6, 2016, Ms. Williams took Plaintiff to the emergency room at Oakwood Heritage Hospital, reporting that Plaintiff had experienced generalized, mild shaking intermittently for the past year. (Tr. 236). Plaintiff denied

---

[2] Later in the hearing, Ms. Williams testified, somewhat inconsistently, that Plaintiff "can't get off the floor or get up period" for three or four hours after each seizure. (Tr. 58).

headaches and loss of consciousness.  (*Id.*).  A physical examination was normal.  (Tr. 236-37).

A week later, Plaintiff and Ms. Williams returned to Oakwood Heritage Hospital, reporting that "tremors" had made her fall and hurt her left foot.  (Tr. 240).  They reported that Plaintiff suffered from seizures that were moderate, lasting two minutes.  (Tr. 242). On examination, Plaintiff was alert and oriented with normal coordination and no cranial nerve deficit, but a seizure disorder was suspected so she was transferred to Beaumont Hospital.  (Tr. 243-44).  At Beaumont, Plaintiff reported suffering a traumatic brain injury when she was hit by a car in 2008 (Tr. 275), but Evan Blum, M.D. observed no cranial nerve or neurologic abnormalities (Tr. 276).  Dr. Blum observed that Plaintiff had a "full body spasm … with [her] right arm shooting upwards," which he described as a "single episode of tonic spasm" with "no change in mentation" and lasting "less than a second." (Tr. 276).  Dr. Blum believed Plaintiff was "likely having Myoclonic seizures"; she was started on Keppra and referred to neurology.  (Tr. 277).

On September 22, 2016, Plaintiff saw Young Ah Lee, M.D., a pediatric neurologist at Beaumont.  (Tr. 228-32).  Ms. Williams reported that Plaintiff had random and variable movements of both arms, "sometimes jerking, sometimes flailing, sometimes fine and sometimes big."  (Tr. 228).  Plaintiff also complained of frequent headaches and sleep problems.  (*Id.*).  Dr. Lee observed that an EEG was reportedly normal and that Plaintiff was alert and oriented, with normal strength and reflexes, and no tremor or abnormal movements during coordination testing.  (Tr. 230).  Dr. Lee opined that Plaintiff's tremors

were "not an epileptic phenomenon" and recommended stopping Keppra; an EEG and brain MRI were ordered.  (Tr. 231).

On October 18, 2016, Plaintiff was taken to Oakwood Heritage Hospital by ambulance after she suffered a seizure at school, fell out of her desk, and cut her upper lip. (Tr. 249).  Plaintiff was able to answer questions appropriately, and was otherwise alert and oriented, with no focal deficit.  (Tr. 249, 252).  CT scans of Plaintiff's head and cervical spine were normal and unremarkable, respectively.  (Tr. 253).

On October 20, 2016, Plaintiff presented to Ram Garg, M.D., reporting seizures, followed by confusion, headache, weakness, and loss of consciousness.  (Tr. 262).  On examination, Plaintiff had normal sensation, coordination, cognitive function, and strength. (Tr. 264).  An EEG was abnormal, however, so Dr. Garg started Plaintiff on medication (diazepam, Keppra, and Oxtellar); advised her to exercise daily; and cautioned her not to lift, push, or pull more than ten pounds.  (Tr. 264).

Plaintiff returned to see Dr. Garg on November 17, 2016, reporting that she was shaking more frequently and waking up in the night.  (Tr. 295).  On examination, Plaintiff was alert and oriented, with normal sensation, coordination, and strength.  (Tr. 296-97). Dr. Garg continued Oxtellar and started Plaintiff on Mysoline; he again encouraged her to exercise daily and advised her not to lift, push, or pull more than ten pounds.  (Tr. 297).

On December 25, 2016, Plaintiff went to the emergency room at Oakwood Heritage Hospital after she missed a dose of her medication and suffered a seizure.  (Tr. 315).  On examination, she was alert and oriented, with no focal defect, and her seizures were described as generally "[w]ell controlled."  (Tr. 315-16).  Plaintiff followed up with Dr.

Garg a couple of days later, and he again observed that she was alert and oriented, with normal sensation, coordination, and strength. (Tr. 292-93).

On February 6, 2017, Plaintiff underwent a consultative psychological evaluation with Firoza Van Horn, Psy.D. (Tr. 267-73). Ms. Williams told Dr. Van Horn that Plaintiff had daily seizures that lasted from six to eight minutes, with loss of consciousness. (Tr. 268). Plaintiff reported feeling sad and having "thoughts of suicide," saying she heard voices that "talk about her seizures in a negative way." (*Id.*). Ms. Williams reported that Plaintiff can independently shower, dress, and maintain adequate hygiene and grooming. (Tr. 270). Dr. Van Horn opined that Plaintiff's symptoms "impact[ed] her social and academic functioning" and that she "d[id] not have the appropriate support that she needs from her family." (Tr. 272). But, she also opined that Plaintiff is "functional in some aspects in her life, such as her ability to care [for] her hygiene and grooming, draw, and prepare her own meals." (*Id.*).

Plaintiff next saw Dr. Garg in May 2017, where it was again noted that she was alert with normal sensation, coordination, and strength. (Tr. 290-91). Mysoline and Oxtellar were continued, and she was started on Topamax. (Tr. 291). When Plaintiff returned to see Dr. Garg on July 24, 2017, she reported suffering a seizure earlier that month but said she did not go to the hospital. (Tr. 286). Dr. Garg again observed that Plaintiff was alert and oriented with normal sensation, coordination, and strength. (Tr. 287-88). Plaintiff was encouraged to exercise daily and advised not to lift, push, or pull more than 15 pounds. (Tr. 288).

On October 17, 2017, Plaintiff went to the emergency room at Oakwood Heritage Hospital after she suffered a seizure and hit her head on a table. (Tr. 318). Plaintiff reported a headache, but had no other complaints, and a CT scan of her head was normal. (Tr. 318, 320). Plaintiff saw Dr. Garg a few days later, at which time Dr. Garg again observed that Plaintiff was alert and oriented with normal sensation, coordination, and strength. (Tr. 284-85). Plaintiff was encouraged to exercise daily and advised not to lift, push, or pull more than 15 pounds. (Tr. 285).

On November 28, 2017, Plaintiff went to the emergency room at Children's Hospital, reporting having had a seizure that morning and another the week before. (Tr. 326). A "seizure breakthrough" was suspected, and she was advised to follow up with Dr. Garg. (Tr. 327). She saw Dr. Garg the same day; he observed that she was alert and oriented with normal sensation, coordination, and strength. (Tr. 281-82). Her Topamax dosage was increased and she was encouraged to exercise daily. (Tr. 282).

On February 28, 2018, Dr. Garg completed a Medical Source Statement, in which he expressed a very different view than Plaintiff and her mother about the frequency of Plaintiff's seizures. Dr. Garg opined that Plaintiff has "complex partial seizures" that occur, on average, two or three times per month (and even then, he noted that her last three seizures were in July 2017 (one) and October 2017 (two)). (Tr. 310). Dr. Garg opined that Plaintiff's seizures typically last two or three minutes, followed by another two or three minutes of confusion, exhaustion, irritability, severe headache, muscle strain, and/or paranoia. (Tr. 311-12). Dr. Garg opined that Plaintiff's seizures do not interfere with her subsequent daily activities. (Tr. 312). He indicated that Plaintiff's seizure medications

cause dizziness, eye focusing problems, lethargy, and lack of alertness, and that her associated mental problems include depression, irritability, social isolation, poor self-esteem, short attention span, memory problems, and behavioral extremes. (Tr. 313). Dr. Garg opined that Plaintiff's seizures would cause her to miss school less than once per month and would require a one-hour, unscheduled break every one or two months. (Tr. 313-14).

### D.    The ALJ's Findings

At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 20, 2016, the application date. (Tr. 15). At Step Two, the ALJ found that Plaintiff has the severe impairments of epilepsy, migraines, tremors, depression, and anxiety. (*Id.*). At Step Three, the ALJ concluded that these impairments do not meet or medically equal a listed impairment. (*Id.*). The ALJ also found that Plaintiff's impairments do not functionally equal any Listing because she has a marked limitation in the functional domain of health and physical well-being, and less-than-marked limitations in the other five functional domains (acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for herself). (Tr. 16-26). Accordingly, the ALJ determined that Plaintiff is not disabled under the Act. (Tr. 26).

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a

determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001); *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss

every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### F.    Analysis

Plaintiff mounts two challenges to the ALJ's finding that she is not disabled under the Act: (1) that the ALJ erred in concluding that she does not meet or medically equal the criteria of Listing 111.02(B); and (2) that the ALJ erred in finding that her impairments do not functionally equal a Listing.  The Court will address these arguments in turn.

> 1.    *Substantial Evidence Supports the ALJ's Finding that Plaintiff's Impairments Do Not Meet or Medically Equal Listing 111.02*

In considering whether Plaintiff's seizure disorder meets or medically equals a listed impairment, the ALJ stated:

> The severity of the claimant's impairments does not meet any listing under section 111.02 because the medical evidence of record does not demonstrate epilepsy characterized by A or B:
>
> A.    Generalized tonic-clonic seizures (111.00F1a), occurring at least once a month for at least 3 consecutive months (111.00F4) despite adherence to prescribed treatment (111.00C).
>
> OR

> B.   Dyscognitive seizures (111.00F1b) or absence seizures (111.00F1c), occurring at least once a week for at least 3 consecutive months (111.00F4) despite adherence to prescribed treatment (see 111.00C).

(Tr. 15-16).

In her motion for summary judgment, Plaintiff argues that the ALJ erred in concluding that she does not meet or medically equal the criteria of Listing 111.02(B). (Doc. #16 at 19-23).  As set forth above, that Listing requires, in relevant part, evidence of dyscognitive or absence seizures "occurring at least once a week for at least 3 consecutive months … despite adherence to prescribed treatment …."  20 C.F.R. pt. 404, subpt. P, app. 1 § 111.02(B).  But, Plaintiff cites no evidence showing that she had such frequent dyscognitive or absence seizures.  Instead, she cites Dr. Garg's opinion that she had "2-3 dyscognitive[3] seizures per month.  (Doc. #16 at 21 (citing Tr. 310)).  That frequency does not satisfy Listing 111.02(B), which requires seizures that occur "at least once a week for at least 3 consecutive months . . ."  Thus, Dr. Garg's opinion actually supports the ALJ's finding that Plaintiff's impairments do not meet or medically equal Listing 111.02(B).[4]

---

[3] Dr. Garg described these seizures as "complex partial seizures" (Tr. 310), which is an older term for dyscognitive seizures.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 111.00(F)(1) (stating that dyscognitive seizures are "formerly complex partial seizures").   In her motion, Plaintiff characterizes her seizures as "absence seizures," which is technically incorrect, but of no import because either dyscognitive or absence seizures can satisfy Listing 111.02(B) if they occur frequently enough.

[4] Plaintiff also appears to challenge the opinions of the state agency physicians, Jerry Evans, M.D. and Rose Moten, Ph.D., claiming that they were "not privy to all of the information necessary to make an accurate assessment of meeting and/or equaling the Listed Impairment at issue."  (Doc. #16 at 23).  But the ALJ gave these opinions "very little weight" for essentially the same reason argued by Plaintiff – specifically, that later evidence showed greater limitations than those described in Dr. Evans' and Dr. Moten's opinions.  (Tr. 19).  Thus, Plaintiff's challenge to these opinions does not undermine the ALJ's decision.

Although Plaintiff cites (unavailingly) to Dr. Garg's opinion in an effort to establish that she satisfies the Listing's frequency element, the Court notes that Plaintiff's own testimony, and that of her mother, suggest seizures occurring frequently enough to meet this element. (Tr. 46, 50-52). However, the Court is not at liberty to find that the ALJ should have credited that testimony over the opinion of Plaintiff's treating physician. *See DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) ("The 'substantial evidence' standard, according to which a district court reviews decisions by the Commissioner, does not permit the court to resolve conflicts in evidence."). The Court also has considered whether the ALJ appropriately took into account Dr. Van Horn's opinion that Plaintiff "does not have the appropriate support that she needs from her family," as that opinion might bear on the ALJ's decision to credit Dr. Garg's opinion over her and her mother's testimony. (Tr. 19, 272). The Court finds the ALJ did not err in that regard because Dr. Van Horn's opinion was made only with respect to her conclusion that Plaintiff's "mother does not take her thoughts of suicide seriously," rather than a concern about Plaintiff's mother not getting medical care for Plaintiff when she needed it. (*Id.*).

Plaintiff next points out that, in declining to find that she meets Listing 111.02(B), "the ALJ stated that the 'medical evidence does not demonstrate disorganization or motor function into extremity resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking or use the upper extremities.'" (Doc. #16 at 21-22 (quoting Tr. 16)). Plaintiff argues that the ALJ erred in requiring her to provide evidence of "disorganization of motor function in two extremities" in order to meet Listing 111.02(B), asserting that such a showing is not required. (*Id.* at 22).

16

As the Commissioner correctly points out, however, Plaintiff's argument conflates two discussions – the ALJ's discussion of Listing 111.02, and her discussion of other listed impairments for neurological disorders.  (Doc. #18 at 18-19).  The ALJ mentioned the lack of disorganized motor functioning only in the context of the latter discussion.  Indeed, after stating that Plaintiff's impairments do not meet the criteria for Listing 111.02(B) – and specifically reciting that criteria – the ALJ began a new paragraph, in which she discussed Plaintiff's tremors and whether they resulted in a lack of disorganized motor functioning.  (Tr. 16 ("[T]he claimant's impairments cause tremors.  However, the medical evidence … does not demonstrate disorganization of motor function ….")).  Because Plaintiff had alleged a traumatic brain injury stemming from the 2008 accident (Tr. 275), it was appropriate for the ALJ to consider whether she demonstrated disorganization of motor function, as Listing 111.18 (Traumatic Brain Injury) – along with most other listed impairments in the category of "Neurological Disorders" – requires such a showing.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 111.00(D)(1) (stating that all listed impairments for neurological disorders, except for Listings 111.02 (Epilepsy) and 111.20 (Coma and persistent vegetative state) require disorganization of motor functioning and a resulting "extreme" limitation in certain abilities).  Thus, a fair reading of the ALJ's decision makes clear that she did not improperly require a showing of disorganized motor functioning in order to meet Listing 111.02(B).

Relying on Social Security Ruling ("SSR") 96-6p, Plaintiff also argues that the ALJ erred by failing to cite a medical opinion in support of her finding that Plaintiff's

impairments do not medically equal a listed impairment.[5]  (Doc. #16 at 22-23).  But, SSR

96-6p was not in effect at the time the ALJ issued her decision; it was rescinded in March

2017 – more than a year before the ALJ's July 2018 decision – and replaced with SSR 17-

2p.  *See SSR 17-2p*, 2017 WL 3928306, at *1 (Mar. 27, 2017).  Under the new ruling, an

ALJ is not required to obtain medical expert evidence before determining that an

impairment does not medically equal a Listing.  *Id.* at *4 ("If an adjudicator … believes

that the evidence does not reasonably support a finding that the individual's impairment(s)

medically equals a listed impairment, we do not require the adjudicator to obtain [medical

expert] evidence or medical support staff input prior to making a step 3 finding that the

individual's impairment(s) does not medically equal a listed impairment.").   Thus,

Plaintiff's argument that the ALJ was required to "receive[] into the record" a medical

opinion on the issue of equivalence (Doc. #16 at 23) is without merit.  *See, e.g., Marvin v.

Comm'r of Soc. Sec.*, No. 17-330, 2018 WL 4214339, at *3, n. 3 (W.D. Mich. Aug. 10,

2018) (SSR 17-2p "has clarified that an ALJ is not required to obtain a medical expert's

opinion before making a finding that an individual's impairments do not meet or equal a

listing impairment").

For all of these reasons, substantial evidence supports the ALJ's conclusion that

Plaintiff does not meet or medically equal the criteria of Listing 111.02(B).

2.      *Substantial Evidence Supports the ALJ's Conclusion that*

---

[5] Somewhat inconsistently, Plaintiff also argues that "[r]elative to the issue of 'equaling' a Listed Impairment, **the ALJ did not make an 'equivalency' finding**[.]"  (Doc. #16 at 22 (emphasis in original)).  This is simply incorrect, as the ALJ specifically found that Plaintiff's impairments do not medically equal a listed impairment.  (Tr. 15 ("The claimant does not have an impairment or combination of impairments that … medically equals … one of the listed impairments ….")).

*Plaintiff's Impairments Do Not Functionally Equal a Listing*

Plaintiff also challenges the ALJ's determination that her impairments do not functionally equal a Listing.  In order to establish functional equivalence, Plaintiff must show marked limitations in two domains of functioning, or an extreme limitation in one domain.  *See* 20 C.F.R. §416.926a(d).  After reviewing the medical and other evidence, reports, and hearing testimony, the ALJ found that Plaintiff has a marked limitation in the domain of health and physical well-being, and less-than-marked limitations in the other five functional domains.  (Tr. 16-26).

In her motion, Plaintiff argues that she has an extreme limitation in the domain of health and physical well-being.  (Doc. #16 at 24-28).  This domain refers to the "cumulative physical effects of physical or mental impairments and their associated treatments or therapies" on a child's functioning.  20 C.F.R. § 416.926a(l).  Examples of limitations in this domain – although not necessarily "marked" or "extreme" – include weakness, dizziness, seizures, or being "medically fragile and need[ing] intensive medical care to maintain your level of health and physical well-being."  20 C.F.R. § 416.926a(l)(4)(i)-(iv).  Also, a claimant may have a marked limitation in this domain if she has "episodes of illness" or "exacerbations … that result in significant, documented symptoms or signs" that occur "an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more" or with a different combination of frequency and duration that is "equivalent in severity."  20 C.F.R. § 416.926a(e)(2)(iv).  If a claimant has episodes of illness or exacerbations that are "substantially in excess" of these frequency and duration requirements, then she may have an extreme limitation.  20 C.F.R. § 416.926a(e)(3)(iv).

Substantial evidence supports the ALJ's finding that Plaintiff's impairments do not cause an extreme limitation in the domain of health and physical well-being.  As the ALJ noted, Plaintiff's seizures, while serious, "were infrequent, with only short-term post-seizure limitations."  (Tr. 26).  The ALJ gave significant weight to Dr. Garg's opinion that Plaintiff had seizures only two or three times per month, with the seizures and resulting limitations lasting for only several minutes.  (Tr. 19, 310-12).  In no respect is that combination of frequency and duration "substantially in excess" of the regulations' requirements.  *See, e.g., Hartman o/b/o S.M. v. Berryhill*, No. 17-13712, 2018 WL 7150367, at *12 (E.D. La. Dec. 28, 2018) (evidence that plaintiff suffered from headaches and often missed school "might support a finding [of a] marked limitation in the domain of health and physical well-being," but not an extreme limitation).

Other medical and non-medical evidence, discussed *supra* at 6-12, also supports the ALJ's determination that Plaintiff did not suffer from an extreme limitation in this domain.  As the ALJ pointed out, Plaintiff's physical examinations were generally unremarkable, and no medical sources observed atrophy, weakness, or loss of coordination in Plaintiff's arms or legs.  (Tr. 18, 19, 24).  Dr. Van Horn opined that Plaintiff was "functional in some aspects of her life, such as her ability to care [for] her hygiene and grooming, draw, and prepare her own meals."[6]  (Tr. 19, 272).  Finally, Plaintiff's teachers noted that she had no

---

[6] In her motion, Plaintiff asserts that the ALJ failed to consider Dr. Van Horn's opinion that Plaintiff's seizures would affect her mental and emotional states in several respects.  (Doc. #16 at 26-27).  For example, Plaintiff points to Dr. Van Horn's observations that she did not like to be social outside of school for fear of having a seizure; that she reported feelings of worthlessness and hopelessness; and that she had experienced thoughts of suicide.  (*Id.*).  But, these effects are not relevant to Plaintiff's functioning in the domain of health and physical well-being, which refers

problems in moving about and manipulating objects (Tr. 167, 183), and either no problems or at most only a slight problem in caring for herself (Tr. 168, 184).

Plaintiff also argues that the ALJ erred in purporting to give significant weight to at least certain aspects of Dr. Garg's opinion, while failing to consider his opinion that her medications would cause side effects, including dizziness, eye focusing problems, lethargy, and lack of alertness. (Doc. #16 at 25-26). But, the ALJ expressly considered Dr. Garg's opinion regarding these side effects and accounted for them in her decision. (Tr. 24 ("Dr. Garg indicated that the claimant's medication caused lethargy and eye focusing problems"), 26 ("Per Dr. Garg's opinion statement, medication side effects cause dizziness, lethargy, and lack of alertness in the claimant")). Moreover, despite these alleged side effects, treatment notes routinely describe Plaintiff as alert (Tr. 230, 237, 243, 252, 263, 281, 284, 287, 290, 293, 296, 316, 319); Dr. Garg routinely observed that she had normal visual acuity (Tr. 281, 285, 288, 293, 297, 300); and no healthcare provider ever mentioned observing dizziness (Tr. 230, 237, 252, 264, 284-85, 287-88, 290-91, 293-94, 316, 320, 327). Thus, while the Court is sympathetic to Plaintiff in terms of her condition and the challenges it creates, she has identified no error in the ALJ's determination that she has no more than a marked limitation in the domain of health and physical well-being.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

---

to the "cumulative *physical* effect of physical or mental impairments and their associated treatments or therapies" on a child. 20 C.F.R. § 416.926a(l) (emphasis added).

III.    **CONCLUSION**

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(Doc. #18)** be **GRANTED**, Plaintiff's Motion for Summary Judgment **(Doc. #16)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: March 16, 2020                               s/David R. Grand
Ann Arbor, Michigan                               DAVID R. GRAND
                                                                United States Magistrate Judge

**NOTICE**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 16, 2020.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager